IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| FLYING J INC., et al.,<br><br>      Plaintiffs,<br><br> vs.<br><br>SPRINT COMMUNICATIONS CO., L.L.P., et al.,<br><br><br><br>      Defendants. | ORDER & MEMORANDUM DECISION<br><br><br>1:99CV00111TC |

   Plaintiffs Flying J, Inc., and its subsidiary TON Services, Inc. (collectively "Flying J"), are a payphone service provider ("PSP"). PSPs, like Flying J, make payphones available to the public at their places of businesses, such as gas stations, motels, and convenience stores. The dispute between Flying J and Defendant Sprint Communications Company arises out of "dial-around" telephone calls made from Flying J telephones. Dial-around calls are coinless calls, such as toll free calls and access code calls. This matter is before the court on Sprint's motion to dismiss Flying J's First Amended Complaint and Flying J's motion to file a second amended complaint.

   Flying J's First Amended Complaint alleges various violations of the  Communications Act of 1934, as amended by the Telecommunications Act of 1996 ("the Act"), 47 U.S.C. §§ 151-614, and several state law claims. The Act  mandates that interexchange carriers ("IXCs") compensate PSPs for dial-around calls.  In the Act, Congress directed the Federal Communication Commission ("FCC") to write regulations "that establish a per call

compensation plan to ensure that all payphone service providers are fairly compensated for each and every completed intrastate and interstate call using their payphone. . . ." 47 U.S.C. § 276 (b)(1)(A).  The FCC, as directed, has now promulgated regulations that require carriers such as Sprint to compensate PSPs for dial-around calls.  See generally 47 C.F.R. §§ 64.1300-1310.

In the motion before the court Sprint generally contends that: (1) the Act does not create a private right of action to seek compensation for dial-around telephone calls; (2) Flying J's state law claims are preempted by federal law; and (3) Sprint is not obligated to compensate Flying J for calls routed to switch-based resellers ("SBRs") before November 23, 2001.

For the reasons discussed in this Order, the court decides, based upon the relevant case law, that the FCC has interpreted a failure to compensate PSPs for dial-around calls as unjust and unreasonable and, therefore, unlawful under 47 U.S.C. § 201(b).  The FCC's interpretation is entitled to deference and  Flying J is permitted to assert its claims for compensation in accordance with  §§ 206 and 207, which allow a private right of action for unlawful actions or omissions.  But the court also finds that there is no private right of action under §§ 276, 407 or 416 of the Act for dial-around compensation.  The court has also determined that three of Flying J's state law claims are not preempted by federal law, but Flying J's claim for negligence under state law is preempted, and, finally, Flying J has stated a viable claim for compensation for calls routed to SBRs before November 23, 2001.  Accordingly, Sprint's motion to dismiss is GRANTED in part and DENIED in part.  Flying J's motion to amend is granted and Flying J is directed to file a Second Amended Complaint in accordance with this Order.

## ANALYSIS

"A complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Ledbetter v.

City of Topeka, Kan., 318 F.3d 1183, 1187 (10th Cir. 2003) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  "In deciding a motion to dismiss under Rule 12(b)(6), the federal courts generally 'should not look beyond the confines of the complaint itself.'"  Bell v. Fur Breeders Agric. Co-op., 348 F.3d 1224, 1230 (10th Cir. 2003) (quoting MacArthur v. San Juan County, 309 F.3d 1216, 1221 (10th Cir. 2002), cert. denied, 539 U.S. 902 (2003)).

### A.   There is No Express or Implied Private Right of Action for Dial-Around Compensation Under 47 U.S.C. § 276.

In its first cause of action, Flying J asserts that "Defendant's failures and refusal to track all compensable calls from Plaintiffs' payphones and/or to pay the full amount of payphone compensation owed . . . violate Section 276 of the Act and the regulations and/or orders issued by the FCC pursuant thereto."  (First Am. Compl. at ¶ 28.)  Flying J alleges that under 47 U.S.C. § 206, Sprint is liable for the full amount of damages sustained because of Sprint's violation of § 276 and the regulations and orders issued in accordance with § 276.  In response to Sprint's argument that there is no private right of action under § 276, Flying J maintains that although § 276, standing alone, does not authorize a private action, it can seek enforcement of the statute through 47 U.S.C. §§ 206 and 207.

Section 276(b)(1) reads:

In order to promote competition among payphone service providers and promote the widespread deployment of payphone services to the benefit of the general public . . . the [FCC] shall take all actions necessary (including any reconsideration) to prescribe regulations that –

(A)   establish a per call compensation plan to ensure that all payphone service providers are fairly compensated for each and every completed intrastate and interstate call using their payphone . . . .

Section 206 provides:

In case any common carrier shall do, or cause or permit to be done, any act . . . in

3

> this chapter prohibited or declared to be unlawful, or shall omit any act, matter or thing in this chapter required to be done, such common carrier shall be liable to the person or person injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter . . . .

Section 207 gives the injured party the right to file a complaint with the FCC or bring an action in federal district court. Flying J contends that § 276, read in conjunction with §§ 206 and 207 creates a private right of action for failure to compensate for dial-around calls. The Tenth Circuit has not directly addressed this issue. But the Ninth Circuit and the D.C. Circuit have both held that plaintiffs do not have a private right of action based upon § 276.

The Ninth Circuit, in Greene v. Sprint Communications Co., 340 F.3d 1047 (9th Cir. 2003), wrote that § 276 "does not establish a right to compensation . . . The statute does not say 'PSPs shall be entitled to fair compensation,' or 'IXCs shall pay PSPs.'" Greene, 340 F.3d at 1050 (emphasis in original). Similarly, the D.C. Circuit in APCC Services, Inc. v. Sprint Communications Co., 418 F.3d 1238, 1246 (D.C. Cir. 2005), held: "Nothing in the statute requires the [FCC] to designate the IXC as the party responsible for dial-around payment." APCC Services, 418 F.3d at 146. Sections 206 and 207 create a private right of action for "violations" of "this chapter." Both courts found that because § 276 does not require IXCs to compensate PSPs, there is no violation of the chapter, and, therefore, no private right of action. See Greene, 340 F.3d at 1050-51; APCC Services, 418 F.3d at 1247. The court agrees with the holdings in both Greene and APCC Services that there is no express private right of action under § 276.

Flying J also contends that an implied private right of action exists to enforce § 276. But, as the court wrote in Greene, the difficulty in accepting this argument "is that Congress did not say that IXCs have to pay, or that private persons may sue for violation of the regulations. It

could have easily done so, as indeed it did elsewhere in the Act." <u>Greene</u>, 340 F.3d at 1051 (emphasis in original). Again, the court agrees with the reasoning of <u>Greene</u>.

    **B.**    **There is No Private Right of Action for Dial-Around Compensation Under 47 U.S.C. §§ 407 and 416(c).**

In its third and fourth causes of action, Flying J brings claims for compensation for dial-around calls based upon 47 U.S.C. §§ 407 and 416(c).

Section 407 states:

> If a carrier does not comply with an order for the payment of money within the time limit in such order, the complainant, or any person for whose benefit such order was made, may file in the district court of the United States for the district in which he resides or in which is located the principal operating office of the carrier, or through which the line of the carrier runs ... a petition setting forth briefly the causes for which he claims damages, and the order of the Commission in the premises. Such suit in the district court of the United States shall proceed in all respects like other civil suits for damages, except that on the trial of such suits the findings and order of the Commission shall be prima facie evidence of the facts therein stated.

47 U.S.C. § 407. Similarly, § 416(c) reads:

> It shall be the duty of every person, its agents and employees, and any receiver or trustee thereof, to observe and comply with such orders so long as the same shall remain in effect.

47 U.S.C. § 416(c). Flying J contends that the FCC regulations requiring common carriers, such as Sprint, to compensate PSPs for certain payphone calls are "orders" for the purposes of §§ 407 and 416(c). The court disagrees.

The court finds that §§ 407 and 416(c) refer "only to adjudicatory and not to rulemaking decisions" consistent with the holdings in <u>Greene</u> and <u>APCC Services</u>. <u>APCC Services</u>, 418 F.3d at 1249. The D.C. Circuit reasoned in <u>APCC Services</u> that "[a]lthough the Communications Act does not define the term 'order,' the Administrative Procedure Act does: '"order" means the whole or part of a final disposition . . . of an agency in a matter other than a rule making.'" <u>Id.</u> (citing 5 U.S.C. § 551(6)). The definition provided in the Administrative

Procedure Act precludes interpretation of a rulemaking decision as an "order" for the purposes of §§ 407 and 416(c).  Additionally, the court agrees with APCC Services that such an interpretation "would render § 201(b) [creating a cause of action for unjust and unreasonable acts] superfluous: any failure to comply with a regulation, not only unjust and unreasonable practices, would be a violation of the Act and therefore actionable under §§ 206 and 207."  APCC Services, 418 F.3d at 1249 (citing Alaska Dep't of Envtl. Conservation v. EPA, 540 U.S. 461, 489 n.13 (2004)).

For these reasons, in accordance with the decisions in Greene and APCC Services, the court rejects Flying J's contention that there is a private right of action under §§ 407 and 416(c) for dial-around compensation.

### C. Flying J Has Stated a Viable Claim for Dial-Around Compensation Under 47 U.S.C. § 201(b).

In its second cause of action, Flying J contends that Sprint's failure to compensate for dial-around calls violates § 201(b), which, in turn, triggers §§ 206 and 207 which specifically provide a private right of action in federal court.   Section 201(b) reads:

> (b) All charges, practices, classifications, and regulations for and in connection with such communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful.

47 U.S.C. § 201.  Section 206 provides that if a common carrier[1] does anything "in this Act prohibited or unlawful" it "shall be liable to the person . . . injured thereby for the full amount of damages sustained in consequence . . . ." 47 U.S.C. § 206.  Accordingly, the question before the court is whether the failure of Sprint to compensate a PSP for dial-around calls is "unjust or unreasonable" and, therefore, unlawful under § 206.

---

[1]Sprint acknowledges that it is a common carrier.

The Tenth Circuit has not addressed this issue and the Ninth Circuit and the D.C. Circuit disagree on whether the failure to comply with the FCC regulations requiring compensation is an "unjust and unreasonable" practice actionable in federal court.

The D.C. Circuit, in APCC Services, found that the FCC had not interpreted the statute in a manner sufficient to bring a failure to comply with its regulations within the reach of § 201(b). The court wrote: "We do not say that the [FCC] has no power to interpret § 201(b) to encompass violations of its rules, and thereby to create private rights of action in courts when previously there were none. We do say the [FCC] did not attempt to exercise any such power here." APCC Services, 418 F.3d at 1248. The APCC Services decision was based primarily on a 1999 FCC Order. Id. at 1247-48.

Chief Judge Douglas H. Ginsburg dissented in APCC Services. Judge Ginsburg pointed out that in 2003 the FCC issued another order regarding the FCC's obligations under the Act. In its 2003 Order, the FCC decided that "failure to pay in accordance with the [FCC's] payphone rules . . . constitutes both a violation of section 276 and an unjust and unreasonable practice in violation of section 201(b) of the Act." APCC Services, 418 F.3d at 1254 (Ginsburg, J., dissenting) (quoting Pay Telephone Reclassification and Compensation Provisions, Report & Order (hereinafter "2003 Payphone Order"), 18 F.C.C.R. 19975 ¶ 32 (2003)). Chief Judge Ginsburg wrote that based on the standard enunciated in Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 844 (1984): "I see no reason to deem unreasonable the [FCC's] determination that it is an unjust and unreasonable practice for a common carrier to fail to pay PSPs as required by the regulation." APCC Services, 418 F.3d at 1255 (Ginsburg, J., dissenting). The Ninth Circuit, in Metrophones Telecomm., Inc. v. Global Crossing Telecomm., Inc., 423 F.3d 1056 (2005), addressed the same issue and agreed with the reasoning of Chief Judge Ginsburg's dissent.

The Ninth Circuit found that in the 2003 Payphone Order, "it is apparent that the [FCC] considered the ability of PSPs to recover compensation for dial-around calls in private actions to be integral to the proper functioning of the payphone compensation function." Metrophones, 423 F.3d at 1066.   Based on  National Cable & Telecomm. Ass'n v. Brand X Internet Servs., 125 S. Ct. 2688 (2005), the Metrophones court determined that the 2003 Payphone Order is afforded deference under Chevron.  Metrophones, 423 F.3d at 1065.  The court reasoned that because "it is apparent that the [FCC's] interpretation of § 201(b) was connected with the broader reasoning that led to its adoption of the final rules, we find no reason to think that the interpretation of § 201(b) advanced in the 2003 Payphone Order . . . is not the 'fair and considered judgment' of the agency."  Id. at 1066-67.  The Metrophones court concluded: "we defer to the [FCC's] reasonable, authoritative interpretation of § 201(b) and hold that a private right of action is available to remedy the unjust and unreasonable practice of failing to pay PSPs according to the [FCC's] regulations."  Id. at 1070.

 After careful review of the applicable case law, the court finds Metrophones and Chief Judge Ginsburg's dissent in APCC Services persuasive.  Accordingly, for the reasons detailed in those opinions, the court concludes that a private right of action exists under 47 U.S.C. § 201(b) and that Sprint can continue with this claim.

      **D.**     **Flying J's State Law Claims are Not Preempted By Federal Law.**

In its fifth, sixth, seventh, and eighth causes of action, Flying J asserts state law claims for unjust enrichment, breach of implied contract, accounting, and negligence.  Sprint argues that these claims are preempted by the Act.  Flying J argues that the Act expressly allows state causes of action that are not inconsistent with its provisions.

The preemption doctrine is based on the Supremacy Clause in the United States Constitution.  U.S. Const. art VI, cl. 2.  Under the Supremacy Clause, state laws which "'interfere

8

with, or are contrary to the laws of congress, made in pursuance of the constitution,' are invalid." Wisconsin Pub. Intervenor v. Mortier, 501 U.S. 597, 604 (1991) (quoting Gibbons v. Ogden, 22 U.S. (9 Wheat.) 1 (1824)).

The first and most important inquiry is whether Congress intended to preempt state law when it passed the relevant federal statute. Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 208 (1985); Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992). Congress can expressly state its intent, or it can be implied by the structure and purpose of the statute. Cipollone, 505 U.S. at 516. Here, § 276(c) of the Act contains an express preemption provision:

> To the extent that any State requirements are inconsistent with the Commission's regulations, the Commission's regulations on such matters shall preempt such State requirements.

47 U.S.C. § 276(c). But the Act also has a broad savings clause:

> Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.

47 U.S.C. § 414. In Metrophones, the Ninth Circuit expressly addressed this issue. The court wrote: "Under both implied conflict preemption and our interpretation of § 276(c), state law is preempted 'to the extent it actually interferes with the methods by which the federal [regulatory scheme] was designed to reach its goal.'" Metrophones, 423 F.3d at 1073 (quoting Ting v. AT&T, 319 F.3d 1126, 1137 (9th Cir. 2003)) (alteration in original). The court agrees with the reasoning of Metrophones and applies the same standard here. Flying J's state law claims may go forward to the extent that they are not inconsistent with federal regulations. Id. at 1074-75.

As in Metrophones, Flying J's claim for breach of implied contract is premised on the existence of an implied contract between the parties and cannot be preempted by § 276(c). Id. at 1076. The existence of a contract imports obligations separate from those imposed by the federal regulations and also permitted by the Act. And, as the court explained, "where private contracts

9

have replaced rigid rate prescriptions, state contract laws provide a background that is not only consistent with, but is integral to, the market-based mechanism of the federal regulations.  Id.

Again, like in Metrophones, Flying J has asserted a claim for unjust enrichment and the court concurs with Metrophones reasoning. Although the Metrophones court found that there was a potential conflict with federal regulations based upon the possibility of an award for unjust enrichment inconsistent with the federal regulations, "a hypothetical conflict is not a sufficient basis for preemption." Metrophones, 423 F.3d at 1077 (quotation omitted).  To the extent that the compensation sought is consistent with federal regulations, there is little possibility of an inconsistent award. Id. at 1078. Accordingly, for the reasons set forth in Metrophones, Flying J's claim for unjust enrichment is not preempted.  Additionally, the court finds that the same principles allow Flying J's seventh cause of action for an accounting to proceed.

Finally, Flying J asserts a claim for negligence, alleging that Sprint failed to perform their legal duties as required by federal regulation.  Like the plaintiff in Metrophones, Flying J seeks damages resulting from its inability to pursue collection of payphone compensation for which Sprint is not responsible.  The court finds no reason to diverge from the Ninth Circuit's holding. Where a plaintiff "seeks to impose liability under state law by shifting to Defendant the payment obligations of a carrier other than Defendant" its claim is inconsistent with the federal system and, therefore, preempted. Metrophones, 423 F.3d at 1078.

    **E.**    **Flying J Has Support For Claims for Compensation for Calls Made Before November 23, 2001.**

Sprint moves to dismiss Flying J's compensation claim for dial-around calls made before November 23, 2001, because it contends that only after that date did the FCC place the burden solely on IXCs to compensate PSPs.  Flying J argues that the FCC has ruled, in a matter of primary jurisdiction, that Sprint is responsible for compensating Flying J for dial-around calls

made before November 23, 2001.  Flying J also argues that the FCC's rules require IXCs to pay for all calls unless another party affirmatively steps forward and acknowledges that it acquired and completed particular calls.

Initially it is necessary to more fully understand the roles of the various entities necessary to complete payphone calls.  When a caller makes a call using a payphone, the call is first received by a local exchange carrier ("LEC") that completes the call if it is a local call.  If the call is long distance, the LEC routes the call to an IXC.  If the call recipient is a customer of the IXC, then the IXC completes the call by routing it to the LEC that serves the recipient.  For these calls the IXC is also able to track the call.  If the recipient is not a customer of the IXC, then the IXC routes the call to one of two types of "resellers:"  (1) switchless resellers; and (2) switch-based resellers ("SBR").  For calls to switchless resellers, IXCs maintain control over the calls and can track the call to completion.  For calls routed to SBRs, the type of calls at issue here, the SBRs assume control of the call.

Sprint is correct that the FCC's rules in effect before November 23, 2001, suggest that an IXC, such as Sprint, is only liable for calls it completed or calls it transferred to a switchless reseller.  In other words, before November 23, 2001, SBRs were responsible for compensating PSPs for the calls handled by SBRs.  The court in Sprint Corp. v. FCC, 315 F.3d 369 (D.C. Cir. 2003), explained the FCC's regulations:

> SBRs were obligated . . . to compensate PSPs for all completed coinless payphone calls they handled.  IXCs, in turn, were required to compensate PSPs only for those calls that the IXCs terminated on their own behalf or on behalf of a switchless reseller, and not for those calls the IXCs transferred to an SBR. . . . [The FCC] further clarified that IXCs must provide requesting PSPs with information about the SBRs to which the IXCs route their calls so that the PSPs could identify precisely which SBRs owed them compensation.
> . . .
> [Effective November 23, 2001,] [t]he Commission largely jettisoned th[is] approach [and] stated that it was revising and modifying its rules to address the difficulty which PSPs face in obtaining compensation for coinless calls placed

>   from payphones which involve a switch-based telecommunications reseller in the call path. . . . [T]he Commission instead shifted the burden of tracking all calls to completion and compensating PSPs to the IXCs alone, while permitting the IXCs to recover these costs from the SBRs to which they transferred the calls.

Sprint, 315 F.3d at 371-73 (citations omitted) (brackets in original).  Accordingly, it appears that as of November 23, 2001, the FCC determined that IXCs would be solely responsible for dial-around compensation to PSPs.

Flying J points to a May 9, 2003 FCC order issued in response to a primary jurisdiction order from this court requesting a dispositive ruling as to four issues, one of which was the SBR's compensation obligations.  Flying J, Inc. v. Sprint Communications Co., No. 1:99CV0111ST, slip op. at 13 (D. Utah Jan. 10, 2000).  Looking at the SBR question, the FCC stated:

>   In addressing the specific FBR issue referred to the Commission, we reiterate the Commission's conclusion that the first facilities-based IXC to which a LEC routes a coinless payphone call must (1) compensate the PSP for the complete call, (2) track or arrange for tracking of all compensable calls, and (3) send to the PSP call completion data to enable the PSP to verify the accuracy of compensation it receives for coinless, compensable calls and/or bill the underlying FBR. . . . [T]o the extent that FBRs have come forward and identified themselves to Flying J as responsible for calls routed to Sprint as the first facilities-based carrier, Flying J must seek restitution from such FBRs.  If FBRs have not come forward to identify themselves, however, Sprint retains responsibility for these calls.

(Memorandum Opinion and Order, In the Matter of Flying J, Inc. and TON Services, Inc., Petition for Expedited Declaratory Ruling Regarding a Primary Jurisdiction Referral from the United States District Court for the District of Utah, CCB/CPD No. 00-04 (May 9, 2003).)

It is clear that the FCC has specifically determined that Sprint retains responsibility for dial-around compensation unless and until particular SBRs come forward and identify themselves to Flying J as responsible for calls initially routed to Sprint.  In sum, Sprint's motion to dismiss Flying J's claims for compensation for calls made before November 23, 2001, fails because the FCC's May 9, 2003 Order makes clear that Flying J does have support for its claims

and can point to a set of facts upon which relief could be based.

## ORDER

For the reasons set forth above, Sprint's motion to dismiss is GRANTED IN PART and DENIED IN PART.  Flying J's motion to amend is GRANTED and Flying J is directed to file a Second Amended Complaint in accordance with the scope of this Order.

SO ORDERED this 4th day of January, 2006.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge